## THE COMPORT.

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

### No. 209.

COLLISION ⊚⟿102—STEAM VESSELS CROSSING—MUTUAL FAULTS.

Both of two steam lighters *held* in fault for a collision in East River while on crossing courses, for failure to keep proper lookouts; the burdened one, having the other on her starboard side, for not sooner changing her course, and the other for improper navigation after crossing signal was given.

Hough, Circuit Judge, dissenting.

⊚⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Lee's Lighters against the steam lighter Comport; the New York & Cuba Mail Steamship Company, claimant. Decree for respondent, and libelant appeals. Modified.

Herbert Green, of New York City, for appellant.

Burlingham, Montgomery & Beecher and Burlingham, Veeder, Masten & Fearey, all of New York City (Chauncey I. Clark, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge.   March 8, 1917, about 7:15 a. m., the steam lighter Bettie Lee with a large deckload of sugar was coming up the East River, bound to Pier 27, Manhattan, and bearing diagonally across the river to a point above the Brooklyn bridge. At the same time the steam lighter Comport was crossing the river diagonally from the foot of Wall street, Manhattan, to Pier 16, Brooklyn. The vessels were concededly on crossing courses; the Comport, having the Lee on her starboard side, being bound to keep out of the way, and the Lee being bound to hold her course and speed. Yet they came together, the bow of the Comport colliding with the starboard bow of the Lee about three feet abaft the stem; the Lee crossing the Comport's course.

The navigation of the lighters with respect to each other was as follows: The Comport, when about 200 feet away, blew one whistle and ported, so as to head more down the stream. The master of the Lee says that upon hearing this signal and without answering it he ported, but finding his lighter was going to port, instead of to starboard, he blew an alarm and reversed full speed astern. The Comport also blew an alarm and went full speed astern.

The District Judge held the Lee solely at fault. That she was at fault is perfectly apparent. She had no lookout at all. Her master was evidently in a state of alarm when he heard the Comport's signal of one whistle, and we do not credit his statement that he ported. There is no reason why, if he did so, the lighter should have gone to port. His explanation as to the effect of the flood tide on his lighter and upon lighters generally is wholly unsatisfactory.

But we think the Comport was also at fault. It is quite plain that it would not have been safe for her to continue her course across the Lee's bows. The master appreciated this and his signal of one whistle was a compliance with article 22 of the Inland Rules, requiring the burdened vessel to avoid crossing ahead of a privileged vessel if the circumstances of the case admit going under her stern. When he blew the signal of one whistle and ported, he must have nearly reached the course of the Lee. Why did he not do so sooner? In his statement to the local inspectors he says that he saw the Lee coming up when she was about 250 feet off the Brooklyn piers, which was about where the collision happened. He did not testify at the trial how far the Lee was off when he first saw her. His mate was acting as look-

out forward, but mixed up in a crowd of 16 longshoremen. We find that a vigilant lookout was not kept, and, even if we were to assume that the Lee was seasonably discovered, we think it was a fault on the part of the Comport to persist in a dangerous course until the lighters were so near together. Ordinary prudence required the Comport to indicate sooner that she was going to port her helm and pass under the Lee's stern.

The decree of the court below is modified, and the court directed to enter the usual decree for half damage, with costs of this court to the libelant.

HOUGH, Circuit Judge (dissenting). The Comport and Lee being on crossing courses, with the latter as the privileged vessel, Comport properly blew one whistle and ported to pass under the Lee's stern. A collision occurred, the bow of the Comport coming in contact with the starboard side of the Lee about three feet abaft her stem. We hold the Lee at fault for a reckless failure to hold her course, and condemn the Comport for two reasons; i. e., she had a poor lookout, and did not port sooner.

I find no evidence justifying the assertion that the lookout was defective; on the contrary, the testimony is uncontradicted that the Comport had two lookouts "way up forward," while the longshoremen passengers were "behind (them) a little way aft of (them)."

Rules for sound signals assume that the vessel to which they are given is obeying the rules, and there is no evidence in this case tending to show that the Comport's one whistle and attendant porting of her helm were not in ample time to keep out of the way of the privileged boat, if the latter had maintained her course.

It is true that the Lee's captain was (as stated by the court) in a "state of alarm" when he heard the single whistle; his reasons for such alarm are set forth at length in his evidence, and fully show that, when he heard said whistle, he was intending to violate the statutory rules, was almost in the act of doing so, and was not sufficiently quick-witted to change his unlawful program and conform to the Comport's lawful signal. I do not think that the Comport should be cast in half damages for not anticipating the other captain's incompetence, and therefore dissent.